**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 8, 2021**

# In the Court of Appeals of Georgia

A20A1955. SEALS v. THE STATE.                    DO-068 C

DOYLE, Presiding Judge.

Quintavious Seals was convicted of stalking[1] and attempting to influence a witness.[2] He appeals, arguing that (1) the evidence was insufficient to support his conviction for attempting to influence a witness; (2) the trial court violated his due process rights by instructing the jury that it could convict him of attempting to influence a witness in a manner not charged in the indictment; and (3) the trial court erred by sentencing him to serve five years on the attempted influencing a witness count. For the reasons that follow, we affirm Seals's conviction, but we vacate his sentence and remand for resentencing.

---

[1] OCGA § 16-5-90 (a).

[2] OCGA §§ 16-10-93 (a); 16-4-1.

Viewed in favor of the verdict,[3] the evidence shows that Seals and R. S., who lived in the same apartment complex, were friends and began a sexual relationship around August 2016. Seals was in jail from October 2016 through February 2017; R. S. believed he was incarcerated for gun charges. On February 12, 2017, R. S. told Seals that she wanted to "break off things." In the days that followed, Seals contacted R. S. multiple times through social media and video chat, and he told her that "if [she] didn't have sex with him one last time, [she] couldn't live in [the apartment complex] anymore." Seals also told her that he had broken into her house, and he continued to call her repeatedly, telling her that she "was going to have sex with [him] one last time." On February 20, 2017, Seals and a friend, who were armed with three guns, knocked on R. S.'s door; Seals pointed one of the guns at her and told her that she broke his heart and that she was the reason a child had been stabbed. On February 21, 2017, after R. S. refused to open the door for him, Seals "started threatening [her] kids, [her] best friend, [her] life," saying that he would shoot her windows and throw "a cocktail" in her childrens' window if she did not have sex with him.[4] In a later call

---

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[4] A Molotov cocktail is a destructive device, typically filled with flammable liquid. See OCGA § 16-7-80 (4) (A); *Johnson v. State*, 242 Ga. App. 610, 611 (530 SE2d 519) (2000).

that same day, she heard Seals tell people to kick in her front and back doors. R. S. told him she was going to call the police, and Seals responded that he would "shoot it out with police," and he threatened to shoot her brother as well. Finally, because she was afraid, R. S. relented, let Seals in, led him to her bathroom, pulled down her pants, and told him to "get it over with"; Seals then had sexual intercourse with her. R. S. did not call the police that night because she was afraid, but she approached a police officer the following day at a gas station and told him that Seals had raped her.

After interviewing R. S. and her friend who was in the apartment at the time of the incident and after R. S.'s sexual assault examination revealed the presence of Seals's DNA, police arrested Seals. While in jail, Seals made multiple phone calls, and the State tendered recordings of four calls into evidence at trial. . In one call to his mother, Seals used the phrase, "y'all go push up on that ho" so that R. S. would call "the lady detective." A police investigator testified that "push up on" was slang for "a form of, whether it's physical or verbal, a threat or to intimidate somebody." In another call, Seals directs the caller to "push up on shawty." During the calls, Seals identified R. S. by name, a description of her appearance, and details of where she lived, and he mentioned that she had three children.

Seals was charged with rape, terroristic threats, influencing a witness, and stalking. After denying Seals's motion for a directed verdict as to the influencing a witness charge, the trial court agreed to also charge the jury on the lesser included offense of attempt to influence a witness. The jury found Seals not guilty of rape, terroristic threats, and influencing a witness, and it found him guilty of criminal attempt to influence a witness and stalking. Seals was sentenced to serve five years for attempt to influence a witness and to serve twelve months, consecutively, for stalking. This appeal followed.

1. Seals contends that the evidence was insufficient to support his conviction for attempt to influence a witness. We disagree.

> [When] reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict. [Seals] no longer enjoys a presumption of innocence, and we will uphold the verdict so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

---

[5] (Citations omitted.) *Arnold v. State*, 262 Ga. App. 61 (1) (584 SE2d 662) (2003), citing *Jackson v. Virginia*, 443 U. S. 307, 319-320 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), *Ellis v. State*, 257 Ga. App. 409, 411 (3) (571 SE2d 198) (2002).

"Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact."[6]

OCGA § 16-10-93 (a) provides in relevant part that a person influences a witness when he, "with intent to deter a witness from testifying freely, fully, and truthfully to any matter pending in any court . . . or before a grand jury, communicates, directly or indirectly, to such witness any threat of injury or damage to the person. . . ." The indictment accused Seals of "unlawfully[,] with intent to deter [R. S.], a witness, from testifying freely and truthfully to a matter pending in [sic] before the Grand Jury of Fulton County, to wit . . . State of Georgia v. Quintavious Seals . . . communicate a threat of injury to the person of [R. S.], by threatening to kill her if she testified against him. . . ." Therefore, the State was required to prove (1) that Seals attempted to communicate, directly or indirectly, a threat to kill R. S. if she testified against him and (2) that he did so with the intent of deterring her from testifying freely in his criminal case.[7]

---

[6] *Dorsey v. State*, 303 Ga. 597, 600 (1) (814 SE2d 378) (2018).

[7] See generally *Martin v. State*, 303 Ga. App. 117, 118-119 (1) (692 SE2d 741) (2010).

5

The phrase "push up on," "without more, is not an explicit declaration of [a threat to kill,"[8] and it "may not specifically threaten death."[9] But Seals's "intent may be inferred upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the [charged act]."[10] Considering the evidence that Seals and a friend went to R. S.'s apartment armed with three guns and Seals pointed a gun at her, threatened to shoot police, her children, and her brother, threatened to throw a flammable "cocktail" through her children's window, and provided her name, physical appearance, and the apartment she lived in to the people on the jail calls, we conclude that the circumstances preceding Seals's comments on the calls and his statements during the calls were sufficient to authorize the jury's finding that Seals

---

[8] *Bryant v. State*, 306 Ga. 687, 691 (1) (a) (832 SE2d 826) (2019).

[9] *Cook v. State*, 198 Ga. App. 886, 887 (2) (403 SE2d 872) (1991).

[10] (Punctuation omitted.) *Johnson v. State*, 277 Ga. App. 499, 505 (2) (627 SE2d 116) (2006), quoting *Carter v. State*, 237 Ga. App. 703, 708 (3) (b) (516 SE2d 556) (1999). See also OCGA § 16-2-6 (Whether an act is committed with the requisite criminal intent is a question for the jury "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."). We find meritless Seals's argument that the State had to prove that Seals intended to deter R. S. from testifying before the Grand Jury; instead, the requisite intent, pursuant to the indictment and the Code section, was to deter her from testifying in the criminal case against Seals pending before the Grand Jury.

6

was guilty beyond a reasonable doubt of attempting to communicate a threat to kill R. S. with the intent of deterring her from testifying freely in his criminal case.[11]

2. Seals further argues that the trial court violated his due process rights by instructing the jury with the statutory definition of attempt to influence a witness instead of giving a charge that tracked the indictment. Specifically, he contends that the instruction authorized the jury to convict him for making "any threat of injury or damage" to R. S. rather than a threat to kill her as alleged in the indictment. We disagree.

> Due process requires that, in criminal cases, jury instructions must be tailored to fit the allegations in the indictment and the evidence admitted at trial. If a jury charge recites the entire definition of a crime and the indictment does not, there is a reasonable probability that the deviation violated the accused's due process rights by resulting in a conviction of a crime committed in a manner not charged in the indictment. Thus, this court has reversed convictions where the indictment specified that the offense was committed one way and the

---

[11] See *Cook*, 198 Ga. App. at 887 (2) (affirming conviction for terroristic threat based on the defendant's statement to the victim "I'm gonna get you" because the defendant had previously threatened her life and assaulted her with a gun).

court charged the jury that it could be committed in two ways without giving a limiting instruction.[12]

Here, the indictment alleged that Seals, with intent to deter R. S. from testifying freely against him, "communicate[d] a threat of injury to the person of [R. S.], by threatening to kill her if she testified against him." But the trial court gave the jury the statutory definition of OCGA § 16-10-93 (a): "A person who, with intent to deter a witness from testifying freely, fully[,] and truthfully to any matter pending in court or before a grand jury communicates, directly or indirectly, to such witness any threat of injury or damage to the person of the witness, shall be guilty of influencing a witness."[13]

However, if

> the indictment charges a defendant committed an offense by one method, it is reversible error for the court to instruct the jury that the offense could be committed by other statutory methods with no limiting instruction. The defect is cured, however, [if] . . . the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment

---

[12] (Citations, punctuation and footnote omitted.) *Hopkins v. State*, 255 Ga. App. 202, 205 (2) (564 SE2d 805) (2002).

[13] The trial court also charged the jury on the lesser offense of criminal attempt.

8

and every essential element of the crime charged beyond a reasonable doubt.[14]

Here, the trial court read the indictment to the jury, instructed that the State had the burden "to prove every material allegation of the indictment" beyond a reasonable doubt," charged the jury that it could only convict Seals if it found beyond a reasonable doubt that he committed the charged offenses "as alleged in the indictment," and sent the indictment back with the jury during deliberations. Under these circumstances, the trial court's curative and limiting instructions, coupled with providing the jury with the indictment, "fairly instructed jurors that they could convict [Seals of attempt to influence a witness] only as charged in the indictment."[15]

3. Finally, Seals contends that the trial court erred by sentencing him to serve five years for attempting to influence a witness. The State concedes this error.

---

[14] (Citations omitted; emphasis supplied.) *Mikell v. State*, 286 Ga. 722, 724 (2) (b) (690 SE2d 858) (2010).

[15] (Punctuation omitted.) *Boccia v. State*, 335 Ga. App. 687, 695 (2) (782 SE2d 792) (2016). See also *Faulks v. State*, 296 Ga. 38, 39 (2) (764 SE2d 846) (2014). Compare *Milner v. State*, 297 Ga. App. 859, 860-861 (1) (678 SE2d 563) (2009) (conviction reversed because trial court gave an improper charge for a second time during a recharge and failed to give limiting instructions ensuring that the jury would find defendant guilty of terroristic threats in specific manner charged in indictment).

The indictment tracked the language of OCGA § 16-10-93 (a), and the trial court instructed the jury on the influencing a witness charge by reading the language of OCGA § 16-10-93 (a). The sentencing range for influencing a witness in violation of OCGA § 16-10-93 (a) is one to five years.[16] And a conviction for attempt allows for half of the sentencing range.[17] Therefore, the range for this charge was one to two-and-a-half years. Accordingly, we vacate Seals's sentence and remand the case for resentencing.

*Judgment of conviction affirmed, sentence vacated, and case remanded for resentencing. McFadden, C. J., and Hodges, J., concur.*

---

[16] See OCGA § 16-10-93 (a). The sentencing transcript shows that the State advised the trial court that the sentencing range for influencing a witness is two to ten years, but that range is for a violation of subsection (b) of OCGA § 16-10-93.

[17] See OCGA § 16-4-6 (b) ("A person convicted of the offense of criminal attempt to commit a felony, other than a felony punishable by death or life imprisonment, shall be punished by imprisonment for not less than one year nor more than one-half the maximum period of time for which he or she could have been sentenced if he or she had been convicted of the crime attempted, by one-half the maximum fine to which he or she could have been subjected if he or she had been convicted of the crime attempted, or both.").